IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| RONALD JOHNSON | CIVIL ACTION |
| --- | --- |
| v. | NO. 25-1978 |
| CITY OF PHILADELPHIA, et al. | |

MEMORANDUM RE: MOTION TO DISMISS

Baylson, J.                                                                                                       January 16, 2026

I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Ronald Johnson alleges he was wrongfully convicted of the 1990 murder of Joseph Goldsby and spent nearly 34 years wrongfully incarcerated, based on Defendants' deliberate misconduct. ECF 1, ¶¶ 1, 11–12. Plaintiff alleges officers within the 39th District of the Philadelphia Police Department (PPD) and detectives in the PPD Homicide Division conspired to frame him for murder, fabricated evidence against him to secure a wrongful conviction, and suppressed exculpatory evidence. Id. ¶¶ 4, 7, 95, 99, 101, 104, 110–11.

In 2021, the Philadelphia District Attorney's Office agreed to reinvestigate the case and provided the Goldsby homicide file to Johnson's post-conviction counsel. Id. ¶ 11. Plaintiff alleges that was the first time he had documentary proof that Defendants had fabricated the evidence against him and covered their tracks, suppressing the evidence of their misconduct. Id. Specifically, Plaintiff alleges he did not know that:

1. Alexander and Jackson had been interviewed nine total times. Defendants McGuoirk, Murray, and Miller had spoken with Jackson on March 21 and again on April 9.

2. Alexander and Jackson had both been shown Polaroid pictures of Plaintiff by Defendants McGuoirk and Miller and declined to make an identification.

1

3. Defendants jointly interviewed Alexander and Jackson, and Defendants McGuoirk and Worrell pressured, coerced, and coached the witnesses over several hours to obtain matching statements.

4. Carlisely Blakeney was familiar with the gunmen and woman and had told Defendants McGuoirk and Murray that they were from out of town.

5. Additional suspects existed but were never investigated and ruled out.

Id. ¶¶ 101, 125. Plaintiff alleges the officers used "police activity sheets," but the activity sheets were not disclosed to the prosecution or the defense, even though they contained exculpatory evidence. Id. ¶¶ 9, 57–58, 65, 79, 83, 97, 105, 111. Plaintiff alleges Defendants did not document any of their misconduct, including the physical abuse and threats used during his interrogations, as well as how the affidavit of probable cause omitted all exculpatory evidence regarding the falsity of Alexander's and Jackson's statements. Id. ¶¶ 68, 90, 101.

Plaintiff amended his request for post-conviction relief and prosecutors joined that request, explicitly admitting that Plaintiff's constitutional rights had been violated. Id. ¶ 11. On March 4, 2024, Johnson's conviction was vacated and the charges against him were dismissed. Id. ¶ 12. On April 17, 2025, Plaintiff filed the instant Complaint, alleging § 1983 claims against the City of Philadelphia and various officers and detectives ("individual Defendants"). See ECF 1. As relevant here, Plaintiff asserts the following claims against Defendants Brown and Ryan ("Defendants"): (1) Deprivation of liberty and denial of a fair trial for "intentionally concealing and deliberately suppressing material exculpatory and impeachment evidence" under § 1983 (Count II); (2) § 1983 and Pennsylvania state law malicious prosecution (Counts III and VI); and (3) civil rights conspiracy (Count IV). On November 10, 2025, Defendants moved to dismiss the

Complaint for failure to state a claim, which Plaintiff opposed on December 9, 2025.[1]  See ECF 40; ECF 51.  On December 16, 2025, Defendants filed a reply brief.  See ECF 54.

The Court notes that this case is at the Rule 12 stage, not summary judgment, and Plaintiff is entitled to proceed with his claims to discovery.  Accordingly, for the following reasons, the Court will **GRANT in part and DENY in part** Defendants' Motion.

## II.  LEGAL STANDARD

To survive a motion to dismiss under Federal Rule 12(b)(6), a plaintiff must include sufficient facts in the complaint that, accepted as true, "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A complaint is insufficient if it suggests only the "mere possibility of misconduct" or is a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements," Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009) (citing Twombly, 550 U.S. at 555), and so it will not suffice if it is "devoid of further factual enhancement," Iqbal, 556 U.S. at 678 (citation omitted).  Thus, in considering a motion to dismiss, the Court accepts all factual allegations as true and views them in a light most favorable to the plaintiff, Doe v. Univ. of Sciences, 961 F.3d 203, 208 (3d Cir. 2020), but may not "assume that [the plaintiff] can prove facts that it has not alleged[,]" Twombly, 550 U.S. at 563 n.8 (quoting Associated Gen. Contractors of Cal., Inc. v. Carpenters, 459 U.S. 519, 526 (1983)).

## III.  DISCUSSION – DELIBERATE DECEPTION UNDER § 1983 (COUNT II)

### A.  Defendants' Contentions

First, Defendants argue Count II should be dismissed because they are entitled to qualified immunity.  ECF 40 at 10.  Defendants argue Count II is based on Brady, and Brady obligations of

---

[1] The remaining individual Defendants and the City of Philadelphia have Answered Plaintiff's Complaint.  See ECF 24 (Paul Worrell's Answer); ECF 32 (Michael P. Fenerty's and City of Philadelphia's Answer); ECF 45 (James Ferguson's and Anthony Massaro's Answer).

3

police officers was not clearly established until 1995. Id. (citing Gibson v. Superintendent of N.J., 411 F.3d 427, 443-44 (3d Cir. 2005)).

Defendants next argue if Count II is a separate claim for deliberate deception, Plaintiff has failed to plead sufficient facts to plausibly assert such a claim against Defendants, and Defendants are entitled to qualified immunity. Id. Defendants contend their only alleged involvement is that Defendant Brown allegedly spoke to Jackson at the scene of the crime, that Jackson allegedly told Defendant Brown he was standing someplace where he could not see the shooting, that Defendant Brown told Defendant Ryan about this interaction, and that neither Defendant conveyed this information to the detectives. Id. at 11. Defendants argue Plaintiff does not allege Defendants had any reason to believe that, at the time they allegedly omitted the information, the identification of an individual who did not see the crime was material to the investigation or would be exculpatory.[2] Id. at 12. Defendants further argue that other than this statement, Plaintiff does not plead any involvement by Defendants in the gathering of information or other evidence, and attributes this conduct to the Homicide Division detectives.[3] Id. at 13–14.

Moreover, Defendants argue Plaintiff does not allege the necessary "Brady-Plus" conduct for a deliberate deception claim. Id. at 12–14. Defendants contend they had no knowledge of what Jackson later told the detectives or what Jackson testified to at trial, and therefore they cannot be accused of failing to correct that testimony. Id. at 12. Defendants further contend that even if they knew of Jackson's testimony, Plaintiff does not allege that Defendants knew the testimony

---

[2] Defendants admit, however, that "[i]f the officers later learned the witness was claiming to have seen the shooting, then the information might be material." ECF 40 at 12 n.1.
[3] Separately, Defendant Ryan argues Plaintiff does not allege that he (1) had any first-hand discussions with Jackson; (2) reported to detectives and omitted any information; or (3) was aware of the substance of what Defendant Brown reported and knew that Defendant Brown's report omitted Jackson's alleged comments. ECF 40 at 14.

was false. Id. at 12–13. Defendants argue Plaintiff does not allege that they took any affirmative acts of deceiving the court or jury to secure Plaintiff's conviction. Id. at 13–14.

Finally, Defendants argue Plaintiff's allegations that Defendants were involved in or present when Plaintiff was allegedly struck during his interview do not support a deliberate deception claim because there is no "false testimony" or evidence arising out of this alleged conduct. Id. at 14–15. Defendants contend Plaintiff is not alleged to have given an incriminating statement; it is not alleged that any witness testified to him giving an incriminating statement to police; and Plaintiff testified to his own innocence at trial. Id.

### B. Plaintiff's Contentions

In response, Plaintiff first argues that Count II is rooted in the Third Circuit's recognition of claims under the Fourteenth Amendment for concealing evidence, where "detectives violate[] due process rights to a fair trial by concealing and/or suppressing relevant and material evidence as part of a larger scheme to deliberately deceive the court and frame [the plaintiff]." ECF 51 at 15 (citing Dennis v. City of Phila., 19 F.4th 279, 290–91 (3d Cir. 2021)). Plaintiff argues this claim is distinct from Brady and has been clearly established as unconstitutional since at least 1942. Id.

Second, Plaintiff contends that he adequately states a deliberate deception claim. Id. Plaintiff contends there was no physical, forensic, or other reliable evidence implicating him in the murder, and the entire case turned on the identification testimony of two eyewitnesses. Id. at 16–17. Thus, Plaintiff argues evidence calling into question the witnesses' credibility or identification of Plaintiff would be material, and Defendants acknowledge this information would be material and inappropriate to suppress. Id.; see also ECF 40 at 12 n.1. Plaintiff argues had this information been disclosed, it could have been used to impeach Jackson's testimony at trial and/or undermined

5

his credibility, and the suppression of this information enabled Jackson to present a false identification in court, deceiving the court and the jury. ECF 51 at 16–17. Plaintiff further contends because Jackson's and Alexander's statements were presented as being corroborative of each other—supported by the fact that Defendant McGuoirk coached Jackson into giving a statement consistent with Alexander's (already fabricated) statement—information regarding Jackson's initial statement could also have been used to impeach Alexander's testimony. Id.

Plaintiff contends Defendants inappropriately rely on interpreting isolated allegations in Defendants' favor. Id. at 17 (citing Foglia v. Renal Ventures Mgmt., 754 F.3d 153, 154 n.1 (3d Cir. 2014); Estate of Roman v. City of Newark, 914 F.3d 789, 796 (3d Cir. 2019)). Plaintiff argues Defendants attempt to minimize their involvement to only Defendant Brown's initial interview with Jackson and his disclosure of this interview to Defendant Ryan. Id. at 17–20. Plaintiff contends Defendants were substantively involved in the investigation and worked alongside the Homicide Division detectives, which ultimately led to Plaintiff's wrongful conviction. Id. Plaintiff specifically alleges that:

1. Defendants were immediately present at the scene interviewing witnesses.

2. After the shooting, Jackson remained in contact with Defendant Brown, and Defendant Brown recommended that Jackson be brought to the homicide division for questioning.

3. Defendants were a part of Plaintiff's first interrogation conducted the day after the purported positive identifications made by Alexander and Jackson.

4. Defendant Ryan physically abused Plaintiff during the first interrogation and did so in the presence of other individual Defendants, including Defendant Brown.

5. Defendant Ryan participated in witness interviews in which witnesses corroborated Plaintiff's alibi.

      6.    Defendant Ryan was involved in Plaintiff's second interrogation where Plaintiff was told by Defendant McGuoirk that he would be framed for Goldsby's murder.

Id.

      Moreover, Plaintiff contends the individual Defendants engaged in misconduct, such as the use of physical violence and threatening to frame him for a crime, in the presence of one another, and this undermines Defendants' contention that they were unaware of the detectives' actions. Id. at 19. Plaintiff argues it can reasonably be inferred that Defendants knew of the detectives' efforts to gather information, including the fabricated statements from Alexander and Jackson, and they knew the evidence would be presented at trial against Plaintiff. Id. at 19–20. Plaintiff alleges he was the target of the investigation because of personal animus that individual Defendants had against him, including Defendant Ryan. Id. Plaintiff alleges the identification of him as one of the assailants was based on evidence fabricated by individual Defendants and Plaintiff was unable to impeach either witness because of Defendants' deliberate suppression of evidence. Id. Therefore, Plaintiff contends it can reasonably be inferred that Defendants deliberately suppressed evidence to secure his wrongful conviction. Id.

      Lastly, Plaintiff contends that even if Defendants did not personally participate in coercing Jackson's misidentification of Plaintiff, they both intended for that to happen and knew that it did. Id. at 18. Plaintiff argues Defendants arrested him at Defendant McGuoirk's direction and participated with Defendant McGuoirk and other detectives in a coercive interrogation to get him to falsely confess the day after Defendant McGuoirk pressured Jackson to give a statement that Plaintiff "looked like" the gunman. Id.

### C. Defendants' Reply

On reply, Defendants argue the only fact alleged is that Defendants did not report the cryptic statement that Jackson was standing someplace where he could not have seen the shooting. ECF 54 at 5. Defendants argue this cannot form a deliberate deception claim, and Plaintiff only offers various conclusions that Defendants "presumably learned" from other people that the shooter was not from the neighborhood, and that Defendants "intended for and knew that Jackson" would "frame" Plaintiff. Id. at 5–6.

Furthermore, Defendants argue Plaintiff offers nothing to support the conclusion that Defendants were aware of any evidence presented at trial, let alone that they engaged in Brady-plus conduct which concealed any allegedly false testimony by Alexander and Jackson. Id. at 6. Defendants argue what the "police" knew is not the same as what Defendants knew. Id. Defendants contend the simple fact officers were involved in the investigation is not sufficient to establish a deliberate deception claim. Id. (citing Coulston v. City of Phila., No. CV 23-4077, 2025 WL 2377676, at *16–17 (E.D. Pa. Aug. 15, 2025) (Baylson, J.)).

### D. Analysis

The Court will first **DENY** Defendants' Motion as to qualified immunity, as Defendants are not entitled to qualified immunity on Count II. As Plaintiff notes, his claim is rooted in the species of claims under the Fourteenth Amendment for concealing evidence, where "detectives violate[] due process rights to a fair trial by concealing and/or suppressing relevant and material evidence as part of a larger scheme to deliberately deceive the court and frame [the plaintiff]." ECF 51 at 15 (citing Dennis, 19 F.4th at 290–91). This claim is distinct from a Brady violation and has been clearly established as unconstitutional since at least 1942. Id. Plaintiff alleges the

8

conduct here occurred in 1990–91.  Id.  Accordingly, the right has been "clearly established" prior to the conduct at issue, and Defendants are not entitled to qualified immunity.

As to the merits, the Court will **DENY** Defendants' Motion on Count II.  Plaintiff has plausibly alleged a material statement (Jackson's identification at the scene of the crime) that Defendants allegedly suppressed (by Defendant Brown telling Defendant Ryan about Jackson's identification, and Defendants omitting the identification and/or failing to document the statement with the Homicide Division detectives).  ECF 1, ¶¶ 67–68, 104(a); ECF 51 at 16–17.  Plaintiff alleges this was part of a larger scheme to deceive the court and frame Plaintiff for the Goldsby murder.  ECF 1, ¶¶ 90–91, 161; ECF 51 at 17.  Plaintiff also alleges this statement was material, as it could have impeached Jackson's testimony at trial and/or undermined his credibility.  ECF 1, ¶¶ 104(a), 119; ECF 51 at 16.  At this stage, the allegations are sufficient to support Plaintiff's theory of the case, such that discovery should proceed on this claim.

## IV. DISCUSSION – CIVIL RIGHTS CONSPIRACY (COUNT IV)

### A. Defendants' Contentions

Defendants argue Count IV should be dismissed because Plaintiff does not plead specific facts to show a conspiracy and alleges only in conclusory terms that all Defendants "acted in concert."  ECF 40 at 18.  Defendants contend Plaintiff does not allege any facts supporting any agreement and only included "threadbare" allegations, which are insufficient to state a claim.  Id. (citing Gainey v. City of Phila., 704 F. Supp. 3d 589, 603 (E.D. Pa. 2023) (Baylson, J.)).

### B. Plaintiff's Contentions

In response, Plaintiff argues the Complaint contains specific allegations that establish a conspiracy.  ECF 51 at 11–12.  Plaintiff contends that, following Defendant Ryan's failed attempt to falsely pin another crime on Plaintiff, Defendant Ryan threatened that he would "get" Plaintiff

9

and would repeatedly pursue false charges against him. Id. at 12–13. Plaintiff contends he became the target of the investigation based on this animus, despite the lack of any reliable evidence implicating him. Id. Plaintiff argues Defendants worked closely with the Homicide Division detectives in investigating the Goldsby murder and creating the false case against Plaintiff. Id. Furthermore, Plaintiff argues Defendants' suppression of Jackson's exculpatory statement was not the only action at issue. Id. Plaintiff contends Defendants openly participated in misconduct, including obtaining false statements from eyewitnesses implicating Plaintiff, using physical violence and abuse to get Plaintiff to falsely confess, arresting Plaintiff without probable cause, and threatening to frame Plaintiff for the murder. Id.

Plaintiff contends Defendants ignore specific allegations and try to dismiss as "not relevant" others. Id. at 14. Plaintiff argues Defendants' actions show a conspiracy to undermine his rights by using physical violence during custodial interrogations, arresting him more than once without probable cause, and, in Defendant Ryan's case, participating in witness interviews that corroborated Plaintiff's alibi. Id. at 14–15. Moreover, Plaintiff contends he need not prove Defendants' actions alone caused any constitutional violation, but rather only they "reached an understanding" with the other defendants to deprive Plaintiff of a constitutional right, at least one of the co-conspirators performed any overt act in furtherance of the conspiracy, and Plaintiff was injured as a result. Id.

### C. Defendants' Reply

On reply, Defendants argue that Plaintiff's brief does not change the fact that Plaintiff does not plead a conspiracy as to Defendants. ECF 54 at 1. Defendants argue that Jutrowski v. Twp. of Riverdale, 904 F.3d 280 (3d Cir. 2018) is unlike this case, as that case offered substantially more evidence of collusion than Plaintiff presents here. Id. at 4–5.

Defendant Brown argues he did not have any "animus" toward Plaintiff, was not present when Defendant McGuoirk allegedly threatened to frame Plaintiff, and did not steer the investigation towards Plaintiff to "get him." Id. at 1–3. Defendant Brown argues he was not involved in any of the other alleged incidents, including that Defendant Ryan allegedly previously tried to "fabricate" a case against Plaintiff, allegedly told Plaintiff he would "get him at some point," and allegedly pulled Plaintiff over on other occasions to pursue false charges against Plaintiff. Id. Defendants argue Plaintiff does not allege any facts as to those charges or how or why they were fabricated. Id. Defendants further contend that Jackson's statement at the scene of the shooting is not consistent with a conspiracy to frame Plaintiff, as Plaintiff does not allege Defendant Ryan was involved in this interview and was only told about it, and Defendant Brown's actions had nothing to do with Defendant Ryan's alleged desire to "get" Plaintiff. Id.

Moreover, Defendants argue they were not involved in or aware of anything else that occurred from the date of Plaintiff's alleged interrogations through and beyond trial. Id. at 4. Defendants contend Plaintiff does not allege that they knew of Alexander's and Jackson's identifications, let alone that they got together with the detectives to come up with a plan to present the identifications or that they created police documents corroborating the identifications. Id. Defendants contend that, by the time these interrogations occurred, Jackson and Alexander had already identified Plaintiff to the detectives, so it is "self evident [sic]" that they could not have entered into an agreement to fabricate identifications that had already occurred. Id. at 3–4. Defendants contend Plaintiff does not allege any threat to frame Plaintiff at this interview, let alone an agreement to do so. Id. Defendants argue Plaintiff does not allege Defendant Ryan participated in any effort to frame Plaintiff and does not allege Defendant Brown was present when this threat was allegedly made. Id.

11

Lastly, Defendants argue Plaintiff does not allege that Defendants did anything to target the investigation towards Plaintiff or agreed with anyone to do so. Id. at 2. Defendants contend there is no evidence of joint conduct or an "agreement and concerted" action aimed at obtaining allegedly false identifications by Alexander and Jackson. Id. at 4–5. Defendants argue Plaintiff does not allege "when the agreement was made, the parties to the agreement, the object of the conspiracy, [or] the actions the alleged conspirators took in furtherance of that objective." Id. at 5 (citing White v. Wireman, No. 1:16-CV-675, 2017 WL 2215277, at *8 (M.D. Pa. May 19, 2017); Capogrosso v. Supreme Court of N.J., 588 F.3d 180, 185 (3d Cir. 2009)).

### D. Analysis

The Court will **DENY** Defendants' Motion to Dismiss as to Count IV. Taking all reasonable inferences in Plaintiff's favor, Plaintiff has alleged sufficient facts that Defendants were part of a conspiracy, or at least "reached an understanding" with the other individual Defendants to deprive Plaintiff of a constitutional right. ECF 51 at 11–12. Plaintiff alleges he became the target of the Goldsby murder investigation based on animus from Defendant Ryan, despite the lack of any reliable evidence implicating him. Id. at 12–13. Plaintiff contends Defendants' actions and misconduct show a conspiracy to undermine Plaintiff's rights, including obtaining false statements from eyewitnesses implicating Plaintiff, using physical violence and abuse to get Plaintiff to falsely confess, arresting Plaintiff without probable cause, threatening to frame Plaintiff for the murder, and suppressing Jackson's exculpatory statement. Id. At this stage, Plaintiff has provided sufficient allegations such that discovery should proceed on this claim.

### V.  DISCUSSION – § 1983 MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS (COUNT III)

#### A. Defendants' Contentions

First, Defendants note that Plaintiff seems to assert only a Fourth Amendment malicious prosecution claim, as incorporated through the Fourteenth Amendment, since Count III refers to Plaintiff's right to "to be free of prosecution absent probable cause," and does not refer to "due process of law," which would directly invoke the Fourteenth Amendment. ECF 40 at 15.

Defendants argue that if Plaintiff asserts a Fourteenth Amendment malicious prosecution claim, the claim must be dismissed. Id. at 15 n.3. Defendants contend a Fourteenth Amendment substantive due process claim for malicious prosecution is foreclosed by Albright v. Oliver, 510 U.S. 266, 271 (1994). Id. Moreover, Defendants argue a Fourteenth Amendment procedural due process malicious prosecution claim is foreclosed by the availability of the state tort remedy for malicious prosecution, which Plaintiff pleads here. Id. (citing Coulston, 2025 WL 2377676, at *15). Defendants further argue they are entitled to qualified immunity, because a Fourteenth Amendment malicious prosecution claim is not clearly established today. Id. (citing Hicks v. City of Phila., 783 F. Supp. 3d 834, 850–51 (E.D. Pa. 2025) (Murphy, J.); Swainson v. City of Phila., No. CV 22-2163, 2023 WL 144283, at *4 (E.D. Pa. Jan. 10, 2023) (Pratter, J.)).[4]

---

[4] Defendants note this Court's decision in Coulston, in which this Court found that qualified immunity is not available for such a claim based on conduct pre-dating Albright in 1994. ECF 40 at 15 n.3. Defendants argue that law later found to be unsettled by the Supreme Court cannot be "clearly established" before the Supreme Court finds it unsettled, and that Circuit Court precedent may not be sufficient to clearly establish the law. Id. (citing Riva-Villegas v. Coresluna, 595 U.S. 1, 6 (2021)). Defendants contend that absent controlling Supreme Court precedent, Albright's decision to leave the procedural due process issue open entitles Defendants to qualified immunity on this issue. Id.

This Court disagrees with Defendants, and as noted *infra*, will decline to grant Defendants qualified immunity here. Moreover, the Third Circuit does not support granting qualified immunity at the Rule 12 stage. See Stringer v. Cnty. of Bucks, 141 F.4th 76, 85 (3d Cir. 2025) ("Rule 12(b)(6) is often 'a mismatch for immunity and almost always a bad ground for dismissal.'") (citing Fogle v. Sokol, 957 F.3d 148, 162 n.14 (3d Cir. 2020)); Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001) ("[Q]ualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint.") (internal quotations omitted).

13

Second, Defendants argue Plaintiff does not allege that Defendants provided any information to the prosecutors, let alone false information, or played any role in the filing of charges. Id. at 17. Defendants argue Detective McGuoirk prepared the affidavit, and even if Jackson's alleged statement to Defendant Brown was included, the affidavit still would have established probable cause, as it contained Jackson's and Alexander's later statements that Plaintiff was the shooter. Id. Defendants argue that even if those statements are invalid, Defendants had nothing to do with those statements. Id. Lastly, Defendants contend (in a single sentence, with no support) that Defendants are entitled to qualified immunity because Plaintiff has failed to plead a violation of his constitutional rights. Id.

### B. Plaintiff's Contentions

In response, Plaintiff first notes that the Complaint expressly identifies both the Fourth and Fourteenth Amendments as the vehicles through which Plaintiff asserts his § 1983 malicious prosecution claim. ECF 51 at 21–22, 22 n.6.

As to qualified immunity, Plaintiff contends this Court explained in Coulston that "[u]nder binding Third Circuit precedent, qualified immunity based on the 'clearly established' prong is foreclosed where the conduct underlying a Fourteenth Amendment malicious prosecution claim occurred prior to the Albright [v. Oliver, 510 U.S. 266 (1994)] decision." Id. at 22 n.6 (citing Coulston, 2025 WL 2377676, at *15). Plaintiff argues qualified immunity is foreclosed here because the conduct at issue occurred prior to 1994: the Goldsby murder occurred in 1990, he was arrested that same year, and he was prosecuted and wrongfully convicted in 1991. Id.

Next, Plaintiff contends Defendants' argument that the Fourteenth Amendment malicious prosecution claim should be dismissed as foreclosed by the availability of the state tort remedy for malicious prosecution is misguided. Id. at 22 n.6 (citing Coulston, 2025 WL 2377676, at *15);

14

see also ECF 40 at 18 n.3.  Plaintiff notes that Coulston was decided at the summary judgment stage, after all discovery had been completed; whereas here, Plaintiff's burden is minimal, and the parties have yet to undergo discovery to establish the veracity of Plaintiff's claims.  ECF 51 at 22 n.6.  Therefore, Plaintiff argues the existence of any potential state tort remedy for malicious prosecution should not justify the dismissal of an adequately pleaded federal claim.  Id.

As to the merits, Plaintiff argues he adequately pleads factual allegations supporting his malicious prosecution claims.  Id. at 23–25.  Plaintiff argues Defendants were intimately involved in the Goldsby murder investigation and provided false information to the prosecutors, which culminated in an affidavit of probable cause that led to his conviction.  Id. at 24.  Plaintiff argues the affidavit relied on fabricated evidence and omitted exculpatory evidence.  Id.  Plaintiff contends he was the target of the investigation because of personal animus from the officers of the 39th District and there was no reliable evidence connecting him to the murder.  Id.

Specifically, Plaintiff contends the entire case turned on Alexander's and Jackson's identifications, which were fabricated and inconsistent with earlier statements made to the police.  Id. at 24–25.  Plaintiff notes that Jackson gave a statement to Defendant Brown on the night of the shooting in which Jackson said he was standing in a location where he would have been unable to see the perpetrators.  Id. at 24.  Plaintiff alleges Defendant Brown told Defendant Ryan about this interview, yet neither Defendant documented Jackson's initial statement; and Defendants concealed this material and exculpatory evidence.  Id.  Plaintiff argues Defendants, through their own conduct and while acting in concert with the other individual Defendants, interfered with the prosecutors' informed decision as to Plaintiff's guilt or innocence.  Id. at 25.

Plaintiff further argues that, in evaluating probable cause, the central question is whether the affidavit omitted facts material to the prosecutor and judge's evaluation of the case.  Id. at 25

15

(citing Pinkney v. Meadville, 95 F.4th 743, 748–49 (3d Cir. 2024)).  Here, Plaintiff alleges the affidavit omitted critical exculpatory evidence that was concealed from the prosecution and defense, and instead relied on Alexander's and Jackson's fabricated statements, which Defendants reasonably would have known to be fabricated.  Id.  Lastly, Plaintiff argues the existence of probable cause is a fact issue for the jury and therefore improper to resolve at the motion to dismiss stage.  Id. at 25–26 (citing Halsey v. Pfeiffer, 750 F.3d 273, 300 (3d Cir. 2014); Groman v. Twp. of Manalapan, 47 F.3d 628, 635 (3d Cir. 1995)).

### C. Defendants' Reply

On reply, Defendants argue they were not aware that Plaintiff was charged with a crime, let alone that they were aware of or participated in the affidavit of probable cause.  ECF 54 at 7–8.  Defendants also argue they were not aware that Jackson's statement would be allegedly material, as Plaintiff was not a suspect when this statement was made.  Id.  Defendants contend Plaintiff does not allege that Defendants initiated the prosecution (or knew that it was being initiated) or did anything to interfere in the prosecutor's discretion.  Id. at 8.  Defendants further argue this claim must be dismissed because probable cause would have existed with or without the allegedly suppressed statement.  Id.  Defendants argue whether other officers fabricated information in the affidavit is not relevant to the claims against Defendants or the import of their alleged conduct on the decision to prosecute.  Id.

### D. Analysis

The Court will first **DENY** Defendants' Motion as to qualified immunity, as Defendants are not entitled to qualified immunity on Count III.  As discussed above, the conduct at issue occurred prior to 1994.  Therefore, the Court finds that qualified immunity is foreclosed by

Albright.  See Coulston, 2025 WL 2377676, at *15 (citing Gallo v. City of Phila., 161 F.3d 217, 220 n.4 (3d Cir. 1998)).

As to the merits, the Court will **GRANT in part and DENY in part** Defendants' Motion on Count III.  Plaintiff alleges Defendants "initiated a criminal proceeding" by knowingly not telling the detectives about Jackson's identification at the scene.  See ECF 51 at 24; Henderson v. City of Phila., 853 F. Supp. 2d 514, 518 (E.D. Pa. 2012) (Brody, J.).  Plaintiff alleges that by not disclosing this identification (and thus preventing the identification from being included in the affidavit), this was providing false information to the prosecutor and/or interfering with the prosecutor's informed discretion.  See ECF 51 at 24–25.  Plaintiff alleges the criminal proceeding ultimately ended in his favor through his conviction being vacated in 2024, but the affidavit omitted exculpatory evidence that was suppressed, as well as relied on fabricated statements, which Defendants reasonably would have known were fabricated based on their involvement in the investigation.  Id. at 24–25.  Plaintiff further alleges Defendants acted maliciously by intentionally framing him for the murder, and as a result, he suffered a deprivation of liberty by being wrongfully convicted and imprisoned for 34 years.  Id. at 5–10.  Accordingly, the Court finds that Plaintiff has pleaded sufficient facts to support this claim.  The Court will therefore **DENY** Defendants' Motion as to Plaintiff's Fourth Amendment malicious prosecution claim in Count III and allow that claim to proceed to discovery.

However, the Court will **GRANT** Defendants' Motion as to Plaintiff's Fourteenth Amendment malicious prosecution claim.  Although the Third Circuit has acknowledged that a § 1983 malicious prosecution claim could be based on procedural due process under the Fourteenth Amendment, see, e.g., Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 792 (3d Cir. 2000), the Supreme Court in Parratt v. Taylor held that "a state actor's random and unauthorized deprivation

of [an] interest [protected by the Due Process Clause] cannot be challenged under 42 U.S.C. § 1983 so long as the State provides an adequate postdeprivation remedy," see Albright, 510 U.S. at 284 (Kennedy, J., concurring) (citing Parratt v. Taylor, 451 U.S. 527, 535–44 (1981)). Accordingly, because Fourteenth Amendment malicious prosecution claims must be based on a deprivation of liberty (or life or property) without due process (*i.e.*, procedural due process), Justice Kennedy concluded in Albright that there is no "legitimacy to invoke § 1983" where the State "provides a [post-deprivation] tort remedy for malicious prosecution." Albright, 510 U.S. at 285–86 (Kennedy, J., concurring). But where a State does not provide a malicious prosecution tort remedy, Parratt drops out and a plaintiff can potentially pursue a § 1983 malicious prosecution claim based on the procedural component of the Due Process Clause. See id. at 286 (Kennedy, J., concurring); see also Coulston, 2025 WL 2377676, at *15. As this Court discussed in Coulston, 2025 WL 2377676, at *16, Pennsylvania provides a remedy for malicious prosecution. Here, Plaintiff pleads the state tort remedy for malicious prosecution in Count VI. Therefore, the Court will **GRANT** Defendants' Motion as to the Fourteenth Amendment malicious prosecution claim in Count III.

### VI. DISCUSSION – MALICIOUS PROSECUTION IN VIOLATION OF PENNSYLVANIA STATE LAW (COUNT VI)[5]

#### A. Defendants' Contentions

Defendants' brief is not entirely clear on Count VI. Defendants seem to argue Count VI should be dismissed because it is the state tort remedy for malicious prosecution, and like Coulston, should be dismissed to be re-pleaded in state court. ECF 40 at 15 n. 3 (citing Coulston, 2025 WL 2377676, at *16). Separately, Defendants contend (in a single sentence, with no support) this claim should be dismissed because Plaintiff has not shown a constitutional violation, and therefore

---

[5] Both Plaintiff and Defendants address their respective arguments for the federal and state malicious prosecution claims together in the same section of their briefs.

Defendants are entitled to qualified immunity. Id. at 17. Defendants further argue Plaintiff has not sufficiently alleged the elements of a malicious prosecution claim. Id. at 15–17. Defendants do not address this argument on reply. See generally ECF 54.

### B. Plaintiff's Contentions

Plaintiff's brief is also not clear on Count VI. First, Plaintiff seems to argue that although this case is like Coulston, Coulston was decided at the summary judgment stage, after all discovery had been completed. ECF 51 at 22 n.6. Therefore, it would be premature to dismiss an adequately pleaded state claim for malicious prosecution. Id.

Furthermore, Plaintiff argues that he has pleaded the elements of a malicious prosecution claim. Id. at 23–25. As discussed above, Plaintiff argues Defendants were involved in the Goldsby murder investigation and provided false information to the prosecutors, and the affidavit of probable cause relied on fabricated evidence and omitted exculpatory evidence, which ultimately led to Johnson's conviction. Id. at 24. Accordingly, Plaintiff argues Defendants, through their own conduct and while acting in concert with the other individual Defendants, interfered with the prosecutors' informed decision as to Plaintiff's guilt or innocence. Id. at 25.

### C. Analysis

The Court will **GRANT** Defendants' Motion on Count VI. First, Defendants are not entitled to qualified immunity on Count VI because qualified immunity is not a defense to state law claims. See El v. City of Pittsburgh, 975 F.3d 327, 334 n.3 (3d Cir. 2020) ("Had the officers raised qualified immunity as a defense to the state-law claims, the argument would have failed, because qualified immunity is a defense only to violations of federal law under § 1983. Immunity from state law claims is governed by the state's immunity doctrine.") (citing In re City of Phila. Litig., 49 F.3d 945, 957 (3d Cir. 1995)). However, in Coulston, this Court dismissed without

19

prejudice the state law malicious prosecution claim to allow the plaintiff to re-file the claim in state court, as this Court declined to extend supplemental jurisdiction over the state law claim. Coulston, 2025 WL 2377676, at *16. Therefore, the Court will **GRANT** Defendants' Motion on Count VI and dismiss without prejudice Plaintiff's state law malicious prosecution claim to Plaintiff re-filing his common law malicious prosecution allegations in state court.

### VII.    CONCLUSION

For the foregoing reasons, the Court will **DENY** the Defendants' Motion to Dismiss as to Count II and Count IV. The Court will **DENY** Defendants' Motion to Dismiss as to Count III on Plaintiff's Fourth Amendment malicious prosecution claim but will **GRANT** Defendants' Motion to Dismiss as to Count III on Plaintiff's Fourteenth Amendment malicious prosecution claim. The Court will **GRANT** Defendants' Motion to Dismiss as to Count VI and dismiss without prejudice Plaintiff's state law malicious prosecution claim to Plaintiff re-filing his common law malicious prosecution allegations in state court.

An appropriate order follows.

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 25\25-1978 Johnson v Phila\25-1978, MTD Memorandum.docx